UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

MARTA MITCHELL-WHITE, individually and
on behalf of all others similarly situated,

        Plaintiff,

     - against –

                     10 Civ. 2678 (RPP)

NORTHWEST AIRLINES, INC.,
DELTA AIRLINES, INC., AS SUCCESSOR TO   **OPINION AND ORDER**
NORTHWEST AIRLINES, INC., and
NORTHWEST AIRLINES PENSION PLAN FOR
CONTRACT EMPLOYEES,

        Defendants.

-----------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

  Defendants Northwest Airlines, Inc., Delta Airlines, Inc. (as successor to Northwest Airlines, Inc.), and the Northwest Airlines Pension Plan for Contract Employees (collectively, "Northwest") move pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) to dismiss all claims against them in the Complaint filed by Plaintiff Marta J. Mitchell-White on March 25, 2010.  Plaintiff Marta Mitchell-White cross-moves for summary judgment in her favor.

1

## BACKGROUND

Plaintiff was born in 1941 and is currently 69 years old. (Pl.'s Local Rule 56.1 Statement of Undisputed Facts ("Pl.'s 56.1 Statement") at ¶ 12.)[1] She was hired by Northwest Airlines in March 1967 and worked as a Northwest reservationist until 1983, and then worked as a customer service agent at the Northwest ticket counter at LaGuardia Airport in Queens, New York, until 2003. (Pl.'s 56.1 Statement at ¶ 13.) During her employment at Northwest and after her retirement, Plaintiff was a participant in the Northwest Pension Plan for Contract Employees (the "Contract Plan"). (Id. at ¶ 14.)

The Contract Plan was established in 1970 to provide pension benefits to Northwest's union-represented employees. (Id. at ¶ 1.) The Contract Plan in effect at the time of Plaintiff's initial employment at Northwest reflected a collectively bargained agreement between Northwest Airlines and The Brotherhood of Railway, Airline and Steamship Clerks (the "Union"). (Affidavit of Terri Keimig, Ex. D.) The Contract Plan has been amended, from time to time, as a result of agreements reached between the airline and the Union. (See Affidavit of Terri Keimig, Exs. B, C, D.)

The Contract Plan provides that Northwest, and Delta as its successor, is responsible for "the general administration of the Plan," and "carrying out the provisions thereof." (Pl.'s 56.1 Statement at ¶ 3.) The Contract Plan offers four types of pension benefits, each with its own eligibility and benefit vesting requirements: (1) Normal Retirement Pension, (2) Early

---

[1] Unless otherwise noted, all cited portions of either party's Local Rule 56.1 Statement are undisputed.

2

Retirement Pension, (3) Disability Retirement Pension and (4) Deferred Vested Pension.  (Id. at ¶ 5.)  Normal Retirement Pension is available to those participants who reach the "Normal Retirement Date," which is defined in the Contract Plan as "the date the Participant would attain age sixty-five (65) years or, if later, the date which would be the fifth (5th) annual anniversary of the date the Participant first became a Participant."  (Id. at ¶ 6; Contract Plan, attached as Exhibit A to the Affidavit of Terri Keimig ("Keimig Aff.") at § 1.2.18.)  Participants under the age of 65, or who are older than age 65 but who have not yet reached their Normal Retirement Date, may, under certain circumstances retire and receive an Early Retirement Pension, Disability Retirement Pension, or Deferred Vested Pension.  (Pl.'s 56.1 Statement at ¶ 7, Defs.' Local Rule 56.1 Statement of Undisputed Facts ("Defs.' 56.1 Statement") at ¶ 7; Keimig Aff., Ex. A at §§ 3.2.1, 3.3.1 and 3.4.1.)  Under the Contract Plan, the monthly amount paid to a participant receiving an Early Retirement Pension, Disability Retirement Pension, or Deferred Vested Pension "payable after the Participant turns age sixty-five (65) years shall be reduced by the Workers' Compensation Benefits, if any, received by the Participant."  (Pl.'s 56.1 Statement at ¶ 8; Keimig Aff., Ex. A at §§ 3.2.2, 3.3.2 and 3.4.2.)  The Contract Plan Summary also states that "when you [i.e. the participant] attain age 65," benefits received under the Early Retirement Pension, Disability Retirement Pension or Deferred Vested Pension are "reduced by the amount of any Workers' Compensation Benefit payable to you."  (Pl.'s 56.1 Statement at ¶ 10; Contract Plan Summary, attached as Exhibit 1 to the Affidavit of Robert J. Bach ("Bach Aff."), at 15, 17 and 19.)  The Summary also explains that Worker's Compensation "[b]enefits payable to you

3

[i.e. the participant] before you are age 65 are disregarded." (Pl.'s 56.1 Statement at ¶ 11; Bach Aff., Ex. 1 at 9.)

On November 30, 2003, Plaintiff was forced to stop working due to work-related injuries. (Pl.'s 56.1 Statement at ¶ 15.) In May 2004, Plaintiff applied for and began receiving Social Security Disability benefits. (Id. at ¶ 16.) In or about summer 2005, Plaintiff applied to the New York State Workers' Compensation Board for Workers' Compensation benefits. (Id. at ¶ 19.) On June 2, 2005, Plaintiff contacted Northwest's Retirement Department to inquire what, if any, effect her receipt of Workers' Compensation benefits would have on the pension payments she would receive upon retirement. (Defs.' Rule 56.1 Statement at ¶ 40.) On June 3, 2005, Pam Ruzicka of the Retirement Department informed Plaintiff by phone that her retirement benefits under the Contract Plan would be offset once she attained age 65 by the amount of any Workers' Compensation benefits she received at that time due to loss of wages. (Id. at ¶ 41.) On June 6, 2005, Jody Quinnell of the Retirement Department informed Plaintiff by letter, "Pension benefits payable at age 65 may be reduced to account for any Workers' Compensation benefits (if applicable) paid to you." (Id. at ¶ 42.) In July 2005, Ms. Mitchell-White elected to begin receiving an Early Retirement Pension under the Contract plan, and on July 31, 2005, she began receiving payments of $1,685.64 per month. (Pl.'s 56.1 Statement at ¶ 17-18.) On or about October 14, 2005, the Worker's Compensation Board awarded Plaintiff $380.00 per week in Workers' Compensation benefits, and she began receiving these payments concurrently with her Early Retirement Pension benefits. (Id. at ¶ 20.) On or around December 22, 2005, Christine A.

4

Wolff of the Retirement Department again advised Plaintiff that her retirement benefits would be subject to offset by the amount of Workers' Compensation benefits she received due to loss of wages once she attained age 65. (Defs.' 56.1 Statement at ¶ 44.)

Ms. Mitchell-White turned 65 on February 19, 2006. (Id. at ¶ 21.) For about two-and-a-half years following Plaintiff's 65th birthday, she received both full monthly pension benefits and Workers' Compensation benefits simultaneously. (Id. at ¶ 22.)

On or about June 18, 2008, Ms. Mitchell-White received a letter from the Contract Plan, stating that the amount of her Workers' Compensation benefits should have been offset from her pension benefits once she turned 65. (Id. at ¶ 23; June 18, 2008 letter from Carol A. Johnson to Marta Mitchell-White, attached as Exhibit 1 to the Affidavit of Marta Mitchell-White ("Johnson Letter".) This letter stated that because the Plan Administrator had failed to offset her benefits upon and after her 65th birthday, Ms. Mitchell-White had been overpaid $39,262.32, and that going forward, her monthly pension would be offset by the amount of her Worker's Compensation Benefits. (Pl.'s 56.1 Statement at ¶¶ 24-25; Johnson Letter.) To calculate the offset, the Plan Administrator subtracted Plaintiff's monthly Workers' Compensation benefit ($1,646.66) from the monthly pension benefit paid to her by the Contract Plan ($1,685.64) and arrived at a monthly pension benefit of $38.98. (Pl.'s 56.1 Statement at ¶ 26; Johnson Letter.) Plaintiff continued to receive her monthly Workers' Compensation benefit of $1,646.66. Because the monthly pension benefit, upon applying the Offset, was less than the Contract Plan's "protected minimum benefit," the Plan Administrator determined that Plaintiff would receive a

5

"protected minimum benefit" of $231.48 per month. (Pl.'s 56.1 Statement at ¶ 27.) The Plan also reduced the protected minimum pension benefit payment by $57.97 in order to recoup the overpayment of $39,262.32, resulting in a monthly pension payment of $173.61. (Id. at ¶¶ 28, 29.) This deduction results in the overpayment being fully repaid by Plaintiff in 2065, when Plaintiff will be 124. (Id. at ¶¶ 30-31.)

On April 8, 2009, Plaintiff filed a Charge of Discrimination against Northwest and the Contract Plan with the Equal Employment Opportunity Commission (the "EEOC"), alleging that Northwest violated the Age Discrimination in Employment Act ("ADEA") by reducing pension benefits to offset Workers' Compensation benefits upon a Plan Participant reaching age 65. (Id. at ¶ 37; Def.'s 56.1 Statement at ¶ 37.)[2] While this Charge was pending, Delta became the successor to Northwest. (Id. at ¶ 38.) On or about January 7, 2010, the EEOC issued a Notice of Right to Sue for violations of the ADEA. (Id. at ¶ 39.)

On March 25, 2010, Plaintiff filed a Complaint in this court alleging that the Contract Plan's provision for offsetting pension benefits by the amount of Workers' Compensation benefits upon a Plan Participant reaching age 65 violates the ADEA and is discriminatory. Defendants filed a motion to dismiss on June 4, 2010. Plaintiff filed a brief in opposition to Defendants' motion, as well as a cross-motion for summary judgment on June 18, 2010. On August 4, 2010, Defendants' filed a reply in support of their motion to dismiss and in opposition to Plaintiff's motion for summary judgment. Oral argument was held on February 8, 2011.

---

[2] Plaintiff's original Rule 56.1 Statement indicates that the Charge was filed on April 8, 2008, but Defendants point out in response that Plaintiff's Affidavit explains that the Charge was filed on April 8, 2009. This is confirmed by Plaintiff's reply 56.1 Statement filed on August 19, 2010 at ¶ 45.

For the reasons stated below, Defendants' motion to dismiss is granted, and Plaintiff's cross-motion for summary judgment is denied.

## DISCUSSION

Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6) on the grounds that the Amended Complaint fails to state a claim under the ADEA.  They contend that because the Workers' Compensation offset (the "Offset") is triggered by a Contract Plan Participant's eligibility for a Normal Retirement Pension at age 65, and not age 65 itself, the Offset does not violate the ADEA.[3]  (Defs.' Mem. in Opp. at 8-14.)  In response, Plaintiff contends that the Defendants violated ADEA §4(a) by offsetting her pension benefit in the amount of her Workers' Compensation benefit once she reached age 65.  (Pl.'s Mem. in Supp. at 10-17.) Plaintiff contends that the commencement of the offset at age 65 renders the Contract Plan discriminatory on its face.  (Id. at 10-11; February 7, 2011 Oral Argument, Tr. at 19.)

I.      Motion to Dismiss Standard

In deciding a motion to dismiss, the court must accept "all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor." Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC, 595 F.3d 86, 91 (2d Cir. 2010).  To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S.

---

[3] Defendants also contend in their papers that should resolution of this motion require interpretation of the Contract Plan, the dispute would be subject to mandatory arbitration under the Railway Labor Act.  45 U.S.C. § 184. Deciding this motion does not require the sort of plan interpretation that would render this case subject to mandatory arbitration, therefore, this Opinion does not address the parties' arguments regarding that issue.

Ct. 1937, 1949 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  This standard does not require "detailed factual allegations," but does demand "more than… unadorned, the-defendant-unlawfully-harmed-me accusation[s]."  Id.  A complaint states a plausible claim for relief only if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1949-50.

II. Age Discrimination Under ADEA § 4(a)

Plaintiff alleges that the age-triggered Contract Plan offset violates ADEA § 4(a), 29 U.S.C. § 623(a)(1), which provides:

> It shall be unlawful for an employer—
> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

29 U.S.C. § 623(a)(1).

In Kentucky Retirement Systems v. EEOC, 128 S. Ct. 2361, 2370 (2008), the Supreme Court held that a state employee pension plan that granted additional years of service, for the purpose of calculating pension benefits, to employees who were disabled prior to age 55 (the plan's normal retirement age) but none to employees who were disabled after age 55, did not violate ADEA § 4(a).  The Court framed the issue as "whether a plan that (1) lawfully makes age in part a condition of pension eligibility, and (2) treats worker's differently in light of their pension status, (3) automatically discriminates because of age."  Id. at 2367.  The Court adopted the rule that "[w]here an employer adopts a pension plan that treats age as a factor, and that employer then treats employees differently based on pension status, a plaintiff, to state a

disparate-treatment claim under the ADEA, must adduce sufficient evidence to show that the differential treatment was 'actually motivated' by age, and not pension status." Id. at 2370.

In this case, Plaintiff has not asserted any allegations demonstrating that the differential treatment she complains of was "actually motivated" by age. While Plaintiff, in her Complaint, does state that "Defendants acted intentionally, willfully, and with malice and/or reckless indifference to Ms. Mitchell-White and the Plaintiff's class's rights," (Am. Compl. ¶ 54), this allegation is unsupported by any specific factual assertions, and falls short of the pleading standards set forth in Iqbal, 129 S. Ct. at 1949. Thus, Kentucky Retirement, *supra*, requires that the Amended Complaint be dismissed due to its failure to allege that the implementation of the Offset at age 65 is actually motivated by age. 128 S. Ct. at 2370.

In any event, applying the reasoning of the Supreme Court's Opinion in Kentucky Retirement demonstrates that the Offset at issue here is non-discriminatory. In evaluating whether the disparate treatment complained of in Kentucky Retirement was "actually motivated" by age, the Supreme Court examined six factors. Id. at 2367. First, the Court noted that "age and pension status remain 'analytically distinct' concepts…one can easily conceive of decisions that are actually made 'because of' pensions status, and not age, even where pension status itself is based on age." Id. Next, the Court considered whether the pension status on which the calculation of benefits hinged was instead a proxy for age, and whether there existed a clear non-age-related rationale for the disparity at issue. Id. at 2367-68. The Court then evaluated whether the plan could, in some cases, work to the advantage of older workers and whether the practice

9

objected to relied on stereotypical assumptions about older workers. Id. at 2369. Finally the Court considered the possibility that an alternative system exists that would correct the disparity while achieving the same goal. Id.

Application of the factors considered by the Supreme Court in Kentucky Retirement to this case requires that Defendant's 12(b)(6) motion be granted. First, as in Kentucky Retirement, the Contract Plan's Offset provision distinguishes participants on the basis of pension status and not age. The Plan's implements the Workers' Compensation Offset when the Participant turns 65 because age 65 is the Contract Plan's Normal Retirement Age. As the date for the commencement of the Offset, age 65 functions merely as a proxy for a certain pension status; eligibility for a Normal Retirement Pension. See Kentucky Retirement, 128 S. Ct. at 2367; Keimig Aff., Ex. A at §§ 1.2.18 (defining "Normal Retirement Date" as the date on which a participant turns 65); Keimig Aff., Ex. A at §3.2.2 (providing that Offset is triggered by turning age 65).

Nor is Pension status used in an impermissibly discriminatory way as a proxy for age. In Kentucky Retirement, the Court found that certain background circumstances underlying the challenged plan eliminated the possibility that pension status was being used as a "proxy for age" in order to discriminate against older workers. 128 S. Ct. at 2367. These circumstances included: (1) the fact that the provision at issue was not an individual employment decision, but "a set of complex system-wide rules…[that] involve not wages, but pensions—a benefit the ADEA treats somewhat more flexibly and leniently in respect to age." Id.; and (2) the fact that

10

the pension benefit at issue was offered to all workers at the time they were hired, on the same nondiscriminatory terms. Id. These background circumstances are similarly present here. The Offset is not an individual employment decision, rather it is part of the overarching Contract Plan, which has been developed through negotiations between Northwest and the Union. Also, the Contract Plan pension benefits, including the Workers' Compensation Offset, are offered on the same terms to all Participants when hired. Every Participant is informed that the amount of any Workers' Compensation benefit they receive will be deducted from their pension benefits upon their reaching 65. (Keimig Aff., Ex. A at §§ 3.2.2, 3.3.2 and 3.4.2.)

Ms. Mitchell-White "does not allege that 'pension status' is being used as a 'proxy for age discrimination'; rather, her age itself—by way of the Offset Provisions age-65 trigger—directly resulted in her injury." (Pl.'s Mem. in Opp. at 16.) Ms. Mitchell-White is correct that the Offset was imposed upon her because she turned 65. What Plaintiff overlooks, however, is that the imposition of the Offset at age 65 is not, in itself, discriminatory, because eligibility for a Normal Retirement Pension correlates with age 65, and pension status may permissibly depend on age. Kentucky Reitrement, 128 S. Ct. at 2367. The Offset at age 65 prevents participants from double dipping by simultaneously receiving retirement benefits and Workers' Compensation benefits, which are designed to replace wages earned from unemployment. See Aless v. Raybestos-Manhattan, Inc., 451 U.S. 504, 515-21 (1981) (use of workers' compensation benefits to offset pension benefits did not violate ERISA). By allowing Plaintiff to receive both her Workers' Compensation benefits and her Early Retirement Pension prior to turning 65, the

11

Contract Plan minimized the effect of her disability on her income during the years prior to Normal Retirement Age.  "Disparate treatment may arise simply as an artifact of plan rules that treat one set of workers more generously in respect to the timing of their eligibility for normal retirement, such as by treating a disabled employee as if he/she had worked until the point at which they would be eligible for a normal pension."  Ellicker v. Borough of Forest Hills, No. 09 Civ. 1143, 2009 WL 3756904 at *3 (W.D. Pa. Nov. 6, 2009).  Such disparate treatment is not discriminatory, because it "turns on pension eligibility and nothing more."  Id.,  See also Kentucky Retirement, 128 S. Ct. at 2370.

There is a clear non-age-related justification for the Contract Plan's implementation of the Offset at age 65.  Doing so ensures equal treatment for all Contract Plan participants receiving Workers' Compensation payments.  If the Offset was not applied at age 65, then those Participants opting for Early Retirement would receive both their pension payments and their Workers' Compensation payments in perpetuity, while Participants who elect a Normal Retirement Pension would be subject to the Offset.[4]   This would disadvantage those Participants who choose not to retire early.  Furthermore, there is no evidence to demonstrate that the Offset was enacted for the purpose of placing older employees at a disadvantage.  Indeed, imposing the Offset at Normal Retirement age ensures that employees who do not select Early Retirement, and accordingly are older at the time they retire, receive the same benefits as those employees who retire early.  This policy seems likely to reduce incentives for older employees to take Early

---

[4] Plaintiff does not challenge the Offset as a general matter, only the fact that it is applied starting at age 65.  (Pl.'s Mem. in Opp. at 1.)

Retirement, and therefore to have the effect of encouraging retention of older workers. There are no allegations demonstrating that the Offset relies on stereotypical assumptions about older workers.

Turning to the question of whether an alternative exists that would achieve the same goal while eliminating the disparity Plaintiff disapproves of, neither party has set forth any alternatives. In light of the fact that Plaintiff does not challenge the Offset, generally, one alternative that suggests itself would be to commence the Offset as soon as a Participant begins receiving both pension benefits and Workers' Compensation benefits instead of waiting for the Participant to reach 65. Such a solution would eliminate the disparity between those Participants who are younger and older than 65, but it would also eliminate the generous treatment granted to employees who become disabled prior to reaching age 65, and therefore it fails to achieve the goals of the Offset as it currently exists. The lack of clear alternatives that satisfy both goals further demonstrates that the Offset is not discriminatory in intent.

In the absence of any factual allegations demonstrating that the Offset's age 65 rule was actually motivated by age, and in view of the factors considered by the Supreme Court in <u>Kentucky Retirement</u>, the Amended Complaint fails to state a legally cognizable claim for relief, and is accordingly dismissed. Defendants' motion is granted and Plaintiff's cross-motion for summary judgment is denied.

IT IS SO ORDERED.

Dated: New York, New York

February 24, 2011

Robert P. Patterson, Jr.

U.S.D.J.

Copies of this Order faxed to:

Herbert Eisenberg
Eisenberg & Schnell LLP
233 Broadway
New York, NY 10279
(212) 966-8900
Fax: 212 966 2505

Robert J. Bach
Law Office of Robert J. Bach, Esq.
60 East 42nd Street, 40th Floor
New York, NY 10165
212-867-4455
Fax: 212-687-2123

Jonathan Michael Herman
Dorsey & Whitney LLP
250 Park Avenue
New York, NY 10177
(212) 415-9200
Fax: (212) 953-7201

Andrew John Holly
Dorsey & Whitney, LLP (MN)
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-8830
Fax: (612) 677-3890